## DE BEVOISE v. SANDFORD.

THE relation of trustee once established, pervades every transaction respecting the trust property, until it is dissolved. The *cestui que trust* may pursue the property through every mutation where it comes back to the trustee; or may demand the proceeds when the property is irreclaimable.

But where trust property was sold under hostile proceedings, by a judicial sentence, upon an incumbrance made prior to the trust, and the trustee subsequently purchases from a *bona fide* purchaser, the relation does not exist, and the property may not be followed. It must be established, that the trustee unwarrantably promoted or allowed the proceedings, in order to realize an advantage to himself.

Nov. 13, 14.
Dec. 2.

*Mr. Edwards*, for complainant.

The defendant in person.

THE ASSISTANT VICE-CHANCELLOR :—An objection was taken by the defendant for want of parties, which, if persisted in, would have been insuperable. The creditors, or some one of them, on behalf of the rest, ought to have been complainants, although I see no objection to the present complainant being united with a creditor. The defendant, however, has at the bar waived the objection; and as the bill prays for a receiver into whose hands the property would go, if any was recovered, and he would be the receiver substituted as trustee in place of the defendant, and for the benefit of all provided for by the assignment of August, 1818, I see no objection to the cause proceeding. The creditors would not be bound, but the defendant would be; and the creditors might avail themselves of this suit and the decree in it, as far as it goes,

and would have the benefit of revising the proceedings and charging the defendant further.

The bill in this cause was filed for the purpose of compelling the defendant to respond, for the proceeds of certain real estate conveyed to him in trust. By a series of deeds, dated 26th and 28th of May, 1818, the complainant conveyed to the defendant certain parcels of property, situate in the city of New-York. By one of these, a house and lot on the corner of Leonard and Chapel-street was conveyed; by another, a house and lot in Reade-street; by a third, the houses and lots Nos. 52 and 57, Leonard-street; and by the last, certain lots known as Nos. 91 and 95, Chapel-street.

On the 1st of June, 1818, the defendant executed a declaration of trust as to these several parcels of property. It is therein expressed, that he held the premises upon trust, " to manage and improve, sell, dispose of, and con-" vey the same to such person or persons, and in such " manner and form, and upon such terms and conditions, " as shall appear to him most advisable, and the monies " arising from the rents or sales, after deducting costs and " commissions, to appropriate towards the satisfaction of " the various advances and engagements made by him, on " account of saïd De Bevoise, the surplus as well as all " the unsold property, to pay over and re-convey to him."

On the 4th of August, 1818, the complainant being insolvent, assigned all his property to the defendant, in trust to sell, manage, improve, and dispose of the same; first, to pay expenses; next, all the advances and responsibilities of the defendant, with reasonable commissions and allowances; the surplus to be appropriated in paying David A. Camnings advances not exceeding $3,911 22; next, in satisfaction of all his debts in proportion, excluding costs; and the surplus, if any, to be paid to himself. It does not appear that any sale or disposition was made of the property under the first conveyance, before the second was executed. The residuary interest of the complainant under the declaration of trust, passed under the subsequent assignment. But as the provisions of both, so far as the

defendant's rights are concerned, appear to be the same, I do not perceive any necessity for discriminating what property passed under the one or the other conveyance.

It appears to me that there are but two questions which can arise in this cause. One, respecting the property on the corner of Leonard and Chapel-street; the other as to the property sold to David B. Ogden. As to the *first*—at the date of the conveyance to the defendant in May, 1818, the premises were subject to a mortgage held by George Pardoe, dated September 3d, 1817, for $3,000. This mortgage was foreclosed, and on the 6th of January, 1820, a master's deed was executed to Pardoe, as the purchaser. On the 1st of March, 1821, the defendant purchased the premises of Pardoe, for the sum of $3,800. The answer is positive, as to the freedom of the defendant from any connection with Pardoe, in the purchase at the master's sale. The complainant, it appears, was in possession of the premises as tenant of Pardoe, prior to the sale to the defendant. After this purchase, the defendant mortgaged the property, together with a lot of his own, to the Merchants' Insurance Company. Upon a foreclosure, both parcels were purchased by the Messrs. Post, for $7,325. Of this the sum of $1,565 23, was paid upon the mortgage. And after payment of costs, the sum of $520 35 was paid into court as the surplus, and was ultimately received by the defendant. The complainant being examined before the master, swore that it belonged to the defendant.

There are few principles of the court of chancery more positive in their nature, or general in their application, than this; that the relation of trustee once established, must pervade every transaction respecting the trust property, until that relation is effectually terminated. Hence, the *cestui que trust* may set aside a purchase by the trustee, without being subject to the burthen of proving that he has made a profit. He may follow the property through every mutation whatever, if the change was effected by the schemes of the trustee, and the property comes back to him; and he may demand the proceeds where the property is irreclaimable. (*Campbell* v. *Walker*, 5 *Vesey*, 678.

*Downes* v. *Grazebrook*, 3 *Mer.* 200. *Sanderson* v. *Walker*, 13 *Vesey*, 601.)

But if the property is sold under hostile proceedings— by a judicial sentence—under an incumbrance made prior to the creation of the trust, the relation must be presumed to be destroyed. Proof must then be adduced, that the trustee unwarrantably promoted or permitted the proceeding, and had a connection with the actual purchaser, to realize an advantage to himself.

No such proof has been produced in the present case, and there can be no ground for charging the defendant, in respect to this piece of property.

As to the Canal-street property as it is termed, it appears that it was comprised in the general conveyance of August, 1818; that it was held in common with one Barker, and was subject to one half of a mortgage for $11,800, held by G. Lorillard. A sheriff's sale took place under a judgment against the complainant, in October, 1818; and all the right and title of the complainant in this and other property, was purchased by the defendant for a nominal sum. By this sale, Sandford took the property discharged from the liens of the judgments, which were very numerous; but he continued to hold it as trustee upon the same trusts as before, and for the benefit of himself and the other creditors, under the assignment of August. As he was their trustee, his dealing with the property in any form, enured to their benefit.

In the month of November, 1823, the defendant sells the property in question to David B. Ogden. He takes in payment 300 shares of Schuylkill Company stock, at 80 per cent. He sells the same in January ensuing, for 95 per cent., payable in 90 days. The purchase money amounted to $4,750.

With respect to this sale, the only evidence as to the price being fair or otherwise, is the slight expression of Barker, the tenant in common, that the only reason for his selling his half at the sacrifice he did, was that he could not get any thing from Sandford, on account of his expenses for filling up the lots. The whole purchase money

amounted to $13,000, in the stock of the Schuylkill Company. Barker recovered of this $9,000, and Sandford, $4,000, on account of Barker's larger advances. The sale was made subject to the mortgage of $11,800.

The reason given by Mr. Barker for assenting to the sale, if the property was sacrificed, certainly does not carry much weight; and I cannot think that I am justified by this expression against an actual sale made by him, in considering the property to have been sold at a decided undervalue. The stock taken was of course trust property. The trustee would have been compelled to have accounted for the actual proceeds on his sale. This sale was consummated by a deed executed the 31st of December, 1823. The defendant avers in his answer, in reply to a charge of fraud in the bill, that the sale was for a fair consideration ; that the price was the just value of the property ; that there was no color or fraud, but that it was unconditional and absolute.

The bill in connection with this subject also charges, that the defendant, at the time of this sale or exchange, as it is alleged to be, owned a certain house and ground in Laight-street, afterwards occupied by David B. Ogden. The answer denies this allegation, and states that he did not own it at the time; that the house was not in existence, nor did he then contemplate building any such house, nor did he then own the lots on which it was built. That in the spring of 1824, he purchased the lot of ground in Laight-street in question ; that in the summer of that year, he commenced building a house upon the premises ; that he agreed when he commenced building, with David B. Ogden, that he should become the tenant of the premises, when completed ; and that afterwards, and about the 9th of July, 1824, an agreement in writing was made between them, by which Ogden was to purchase the premises, and to give in exchange the Canal-street lots, before sold to him ; which agreement was carried into effect.

Applying the principles which I have before stated to this transaction, it appears that the power of sale conferred on the defendant, was exercised by a disposition for such

a price, as there is no reason to pronounce a manifest sacrifice of the property. I cannot see ground for inferring fraud or a scheme to make a personal profit from any marked inadequacy of value. I find no trace of evidence or circumstances from which to presume a secret participation with the vendee in future profits, or any interest or concern in the land thereafter. I find what I must conclude to be a *bona fide* sale under an absolute power; and I find some three or four months afterwards, a purchase of another distinct parcel of property by the defendant, on his own account, and a negotiation for an exchange of this property with the improvements to be put upon it, for the property before sold. It strikes me that there is no ground for impeaching the transaction, or holding the defendant responsible for more than the price received from Ogden.

The complainant is entitled, if he thinks fit to require it, to a reference to take an account of the dealings with the trust property. But it must be upon the footing of having all the dispositions made of the same, established as valid. If he elect to take an order of reference upon those terms, he may do so by filing a written election to that effect, within twenty days from the entry of this decree. If not, the bill must be dismissed, but without costs.